IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BRYAN ARVIDSON,<br><br>Plaintiff,<br><br>vs.<br><br>BUSINESS MANAGER WALN,<br>UNIT MANAGER CANNON,<br>WARDEN PETE BLUDWORTH,<br><br>Defendants. | CV 23–14–GF–BMM<br><br><br><br>ORDER |

Plaintiff Bryan Arvidson ("Arvidson") is a pro se state prisoner who is serving a 40-year sentence with the Montana Department of Corrections. Although Arvidson is presently housed at Montana State Prison, he was previously incarcerated at Crossroads Correctional Center ("Crossroads"). Arvidson's claims arise during his Crossroads incarceration. Arvidson initially alleged that he was not timely provided with indigent office supplies frustrating his litigation efforts. (Doc. 1.) Arvidson then sought leave to add a claim for damages related to a purported assault by Defendant Cannon. (Doc. 14.)

1

Defendants seek summary judgment on the basis that Arvidson's claim regarding indigent supplies is moot and that even if it was not moot, it lacks merit. (Doc. 41 at 7-11.) Defendants next asset that Arvidson fails to state a claim for relief related to the alleged assault. (*Id*. at 11-15.) The undisputed facts show that Defendants' arguments are well-taken. Defendants' summary judgment motion will be granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). The nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870–72 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent

2

evidence in support of their claims). Defendants' motion did not include the requisite *Rand* Notice. *See* (Doc. 40.) Defendants notified the Court of this deficiency and requested that Arvidson be provided additional time to file a supplemental response. *See* (Doc. 47; Doc. 48.)

## BACKGROUND

The facts are undisputed unless otherwise noted and viewed in the light most favorable to Arvidson, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). From November 15, 2022, to August 1, 2023, Arvidson was housed at Crossroads. Arvidson advised a case manager that he had multiple legal cases ongoing and needed indigent office supplies. These conversations allegedly occurred on November 16, 19, 20, and 21 of 2022. (*Id.* at ¶ 7.) Arvidson sent informal grievances, kites, and offender staff request forms (OSR), asking for office supplies. These requests were sent on November 21, 22, 23, 24, and 26, 2022; December 1, 3, 4, 5, 6, 9, 10, 19, 2022, and January 5 and 13, 2023. (*Id.* at ¶ 7.) Arvidson sent multiple requests on several of these days. (*Id.*)

Montana Department of Corrections Policy No. 4.1.4 sets out the procedure for indigent offenders to obtain a package containing personal hygiene and legal materials. *See*, (Doc. 42-2.) A prisoner must submit a request form to the facility resident account representative by the second day of the month to apply for Indigent Status. (*Id.* at 1.) A prisoner may apply only once per calendar month.

The accounting department verifies the offender's financial status to approve or deny the request. (*Id*.) The request will be denied if the offender (1) has received or spent more than $15 in the previous month, (2) has $15 or more on his account at the end of the previous month, or (3) has $15 on his account at the time of verification. (*Id*.) An offender must reapply each month in order to continue receiving the indigent package.

No record exists of Arvidson applying for indigent status for the month of December 2022. In December of 2022, Arvidson received a $50 deposit into his inmate account. *See e.g*., (Doc. 46 at 2.) Arvidson was ineligible for indigent status for January of 2023. (Doc. 42-3 at 3-4.) Arvidson applied for indigent status in February 2023, but his request was denied because he had spent more than $15 in January. (Doc. 42-3 at 25.)

Arvidson was granted indigent status for March, April, May, June and July of 2023. The mail logs from Crossroads demonstrate that Arvidson was able to send many mailings through facility's mail system, while on both non-indigent and indigent status. (Doc. 42-3 at 15-24.)

Arvidson filed this action alleging civil rights violations under 42 U.S.C. § 1983 in March 2023. (Doc. 1.) Arvidson later sought leave to file an amended complaint. The Court granted leave to amend. *See*, (Docs. 14 & 27.) Arvidson never actually filed an amended complaint. Arvidson generally alleges that he

4

should have been eligible for indigent status upon his arrival at Crossroads and that he was wrongfully denied indigent materials. (Doc. 1 at 4-5, 7-14.) Arvidson also alleges that Defendant Cannon assaulted him and caused injuries during an incident in which he was challenging the denial of indigent materials in Cannon's office. *See*, (Doc. 14 at 2.)

## ANALYSIS

Defendants seek summary judgment on the ground that Arvidson's indigent supplies claim is now moot and, alternatively, it lacks merit. (Doc. 41 at 7-11.) Defendants also argue that Arvidson fails to state a claim for relief regarding Cannon's alleged assault. (*Id*. at 11-15.) Defendants' arguments have merit. The Court will grant summary judgment in their favor.

### A.   Limited Access to Legal Supplies

Defendants' argument regarding mootness is persuasive. A federal court's jurisdiction is limited to actual cases or live controversies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To avoid dismissal for mootness, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id*. at 478 (*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A case becomes moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1984) (quotation omitted). "If an event occurs that prevents the court from granting

effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F. 3d 1118, 1123 (9th Cir. 1997).

The relief sought by Arvidson in initiating his actions, an injunction directing the Defendants follow the indigent inmate policy and provide him supplies, *see* (Doc. 1 at 4), has occurred. From March of 2023, until his transfer back to Montana State Prison, Arvidson was granted and remained on indigent status. There is no relief that this Court presently could provide to Arvidson, and this claim, as pleaded in the original complaint, has been rendered moot.

Arvidson failed to file an amended complaint. Arvidson did seek leave of the Court to add a claim for damages. Defendants did not object. *See e.g.*, (Doc. 19 at 2.) Accordingly, the Court considers whether Defendants wrongfully withheld Arvidson's indigent status during the time period from November 2022 through February 2023. The Court also will evaluate whether Defendants committed a corresponding violation of Arvidson's civil rights.

Despite being given multiple extensions of time and opportunities to respond to Defendants' summary judgment motion, *see* (Docs. 43, 45, and 50), Arvidson failed to file a Statement of Disputed Facts. Arvidson's filings were largely non-responsive to Defendants' specific arguments and instead, recast his initial claims. *See*, (Docs. 46, 49, and 51.) Arvidson has not genuinely disputed that he was wrongfully denied indigent status. Arvidson provides nothing more than his own

6

conclusory statements that he should have been deemed "indigent" upon his arrival at Crossroads. The documents provided by Defendants demonstrate, however, that Arvidson failed to meet the requisite criteria under the Montana Department of Corrections Policy 4.1.1, before March of 2023.

Arvidson has not shown that Defendants violated his right of access to the courts during this same time period. Prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right of access is grounded in the First and Fourteenth Amendments. *Silva v. DiVittorio*, 658 F. 3d 1090, 1101-02 (9th Cir. 2011) ("Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."); *Cornett v. Donovan*, 51 F. 3d 894, 897 (9th Cir. 1995) ("The right of access is grounded in the Due Process and Equal Protection Clauses"). A prisoner must allege that there was an inadequacy in the prison's legal access program that caused him an actual injury to state a claim for violation of the right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350-55 (1996).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). An inmate

must demonstrate that he suffered actual injury to allege a violation of the right of access to the courts. *Lewis*, 518 U.S. at 349. "[A]ctual injury [is] actual prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing deadline or to present a claim." *Id*. at 348; *Harbury*, 536 U.S. at 415 (2002) (*quoting Lewis*, 518 U.S. at 353 & n. 3); *Nevada Dep't of Corr. V. Greene*, 648 F. 3d 1014, 1018 (9th Cir. 2011).

The injury requirement is not "satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354-55. An inmate satisfies the injury requirement only if an inmate is denied access to direct appeals from which the inmate is incarcerated, habeas petitions, and civil rights actions brought pursuant to 42 U.S.C. § 1983. *Id*. at 354. "Failure to show that a 'nonfrivolous legal claim ha[s] been frustrated' is fatal" to a denial of access to the courts claim. *Alvarez v. Hill*, 518 F. 3d 1152, 1155 n. 1 (9th Cir. 2008).

Arvidson has not alleged that he suffered an actual injury because of his limited access to legal supplies. The record demonstrates that Arvidson mailed 47 items of legal mail from November 21, 2022, to February 28, 2023. (Doc. 42-3 at 22-24.) Arvidson referenced a missed deadline in his original complaint but provided no further explanation. (Doc. 1 at 5, 8.) Arvidson did not renew this argument in his responses to the summary judgment motion. Arvidson has not identified a nonfrivolous legal claim that was frustrated due to the purported denial

8

of indigent materials. This failure proves fatal to his claim. *Alvarez*, 518 F. 3d at 155 n. 1. Defendants are entitled to summary judgment as a matter of law.

    **B.**    **Assault/Excessive Force**

A court analyzes a prisoner's claim asserting that prison staff used excessive force under the Eighth Amendment. *See Hudson v. McMillan*, 503 U.S. 1, 5–6 (1992). The U.S. Supreme Court has divided this inquiry into two components: "(1) a 'subjective' inquiry into whether prison staff acted 'with a sufficiently culpable state of mind;' and (2) an 'objective component' that asked whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (quoting *Hudson*, 503 U.S. at 8).

Concerning the subjective component, it is well-established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Nevertheless, prison officials are granted a "wide-ranging deference" in the execution of policies and practices they believe necessary to preserve prison discipline and security. *Id.* at 321–22. "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incident of these or any other breaches for prison

discipline." *Id.* at 322. "It does not insulate from review actions taken in bad faith or for no legitimate purpose, but it requires that neither judge nor jury substitute their judgment for that of officials who have made a considered choice." *Id.*

When prison officials stand accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Five factors bear on this inquiry: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (internal quotation marks omitted). It is the use of force itself, rather than the resulting injury, that drives the inquiry. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.").

Arvidson failed to file his amended complaint. Arvidson instead filed a motion seeking leave to amend his complaint. In his original complaint, relative to the purported assault, Arvidson alleged that on December 18, 2022, he went to speak with Unit Manage Cannon ("Cannon") in his office about the refusal to provide indigent materials. (Doc. 1 at 10.) Arvidson alleges that Cannon became

upset when Arvidson quoted policy to Cannon and Cannon asked Arvidson to leave. Arvidson called Cannon a "punk." Cannon became angry, swore at Arvidson, and shoved him into a wall. (*Id*.)

Arvidson was placed in the restrictive housing unit ("RHU") for calling Cannon a name and failing to follow an order. (*Id*. at 11.) Arvidson attached as an exhibit to his complaint a copy of a grievance and report Arvidson filed against Cannon. (Doc. 1-1 at 33–38.) Arvidson reported that Cannon shoved him into the wall three times and that his right shoulder popped. Arvidson acknowledged previously having broken his right collar bone and that he was in pain following the incident. (*Id*. at 35.) Arvidson repeated similar allegations against Cannon in his motion to amend. *See* (Doc. 14 at 2.)

By Arvidson's own account, he came into Cannon's office to confront him about not receiving the supplies to which he believed he was entitled. Cannon advised Arvidson to leave his office and Arvidson responded by calling Cannon a "punk." The record shows no "bad blood" between the two men before this incident. *See e.g., Cummings v. Borges*, 2012 WL 4022682, at *6 (C.D. Cal. July 9, 2012) (finding no evidence of malicious or sadistic intent on behalf of prison staff where inmate "does not allege prior confrontations or 'bad blood'"). Cannon's actions, even when viewed in the light most favorable to Arvidson, fail to rise to

11

the level of actions taken "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Under *Hudson*, the extent of the injury may provide some indication of the amount of force applied and whether it was necessary. *See Wilkins*, 559 U.S. at 37-38. Arvidson claims he heard a "pop" and experienced pain and numbness after the event. Arvidson's medical records also demonstrate that he was involved in a 2020 dirt bike accident in which he broke his clavicle before his incarceration. Despite having surgery scheduled to repair the clavicle in October of 2020 and then rescheduling the surgery two separate times, Arvidson never had the clavicle surgically repaired. (Doc. 42 at ¶¶ 2-4); *see also*, Medical Records (Doc. 42-1.) Arvidson's medical records show that he had a prior injury to his collarbone and shoulder that was left untreated. Arvidson fails to identify any lingering injuries or explain his request for $140,000 in "actual damages" in Arvidson's responses to the Defendants' summary judgment motion. *See e.g.*, (Doc. 14 at 2.)  No evidence shows that Arvidson was "gratuitously beaten" beyond efforts to restrain him. *See Wilkins*, 559 U.S. at 38.  Arvidson's injuries do not support a finding that Cannon used excessive or unreasonable force.

As to the need for application of force, Arvidson admits that he and Cannon exchanged words and that he called Cannon a demeaning name.  Arvidson, by his own admission, was put in administrative segregation because of his

insubordination during this incident. Arvidson escalated the encounter with Cannon. *See Cummings*, 2012 WL 4022683, at *5 (finding handcuffing was necessary after an inmate refused orders to go to his cell and lock up).

The next *Hudson* factor examines the relationship between the need for the application of force and the amount of force used. 503 U.S. at 7. Cannon restrained Arvidson against the wall. Arvidson does not allege that he was taken to the ground or that other officers were involved in restraining him. Arvidson alleges that Cannon treated him roughly. Nothing in the record indicates that Cannon knew of Arvidson's pre-existing clavicle injury. Defendants argue that such inadvertent treatment to Arvidson's old injury during the interaction fails to meet the Eighth Amendment's high standard. That is, the alleged force did not constitute an "unnecessary and wanton infliction of pain" and was not "repugnant to the conscience of mankind." (Doc. 41 at 14) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The fourth *Hudson* factor addresses the threat reasonably perceived by the defendant. 503 U.S. at 7. Arvidson concedes that a verbal altercation occurred and that he escalated the incident by calling Cannon a "punk."

The final *Hudson* factor asks whether efforts were made to temper the severity of a forceful response. 503 U.S. at 7. Given the level of force used to restrain Arvidson against a wall, it remains unclear what less-severe option may

13

have been used.  Arvidson claims he was slammed against the wall, but he has not shown that this action exceeded the bounds of Cannon's attempt to restrain him.

The record evidence, viewed in the light most favorable to Arvidson, does not show that Cannon acted "sadistically for the very purpose of causing harm." Arvidson's prior clavicle fracture, which he acknowledges, likely played a significant role in the subsequent pain that he experienced. Nothing suggests that Cannon acted merely to cause "wanton pain and suffering."  By his own admission, Arvidson escalated the encounter, posing a threat to institutional order. Cannon's reaction signaled a penological goal of deescalating the situation and taking control over Arvidson.  Summary judgment is granted in favor of Cannon.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment (Doc. 40) is GRANTED.

The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk of Court is additionally directed to have the docket reflect that the Court certifies, pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure, that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

DATED this 25th day of February, 2025.

_____
Brian Morris, Chief District Judge
United States District Court